# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
HECTOR FIGUEROA
6 Doolin Bay Drive  Bear, DE 19701

**DEFENDANTS**
DELAWARE COUNTY
201 W. Front Street  Media, PA 19063g

**(b)** County of Residence of First Listed Plaintiff: New Castle County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Delaware County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Noah S. Cohen, Esq.  Weir Greenblatt Pierce LLP
1339 Chestnut Street, Suite 500 Philadelphia, PA 19107
ph. 215-241-7766

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [x] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [x] 4 | [ ] 4 |
| Citizen of Another State | [x] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*   Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability / [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability |  | **PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander |  | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability / [ ] 368 Asbestos Personal Injury Product Liability |  | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine |  | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **LABOR** | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle / **PERSONAL PROPERTY** / [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability / [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations |  | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury / [ ] 380 Other Personal Property Damage |  | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice / [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise |  | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights / **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 220 Foreclosure | [ ] 441 Voting / [ ] 463 Alien Detainee |  | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [x] 442 Employment / [ ] 510 Motions to Vacate Sentence |  | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations / [ ] 530 General |  | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment / [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other / **Other:** / [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application |  | [ ] 950 Constitutionality of State Statutes |
|  | [ ] 448 Education / [ ] 550 Civil Rights | [ ] 465 Other Immigration Actions |  |  |
|  | [ ] 555 Prison Condition |  |  |  |
|  | [ ] 560 Civil Detainee - Conditions of Confinement |  |  |  |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. sec. 1332

Brief description of cause:
Violation of the Pennsylvania Whistleblower Law, 43 P.S. sec. 1421 et. seq.

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [ ] Yes  [x] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE: Feb 9, 2023

SIGNATURE OF ATTORNEY OF RECORD: *[signature]*

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: __6 Doolin Bay Drive, Bear, DE 19701__

Address of Defendant: __201 W. Front Street, Media, PA 19063__

Place of Accident, Incident or Transaction: __201 W. Front Street, Media, PA 19063__

---

**RELATED CASE, IF ANY:**

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☑

I certify that, to my knowledge, the within case  is / ☑ is not  related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __02/09/2023__       *Attorney-at-Law / Pro Se Plaintiff*       __313849__  *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

**A. Federal Question Cases:**
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases *(Please specify)* _____

**B. Diversity Jurisdiction Cases:**
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury *(Please specify)* _____
7. ☐ Products Liability
8. ☐ Products Liability – Asbestos
9. ☑ All other Diversity Cases *(Please specify)* __Pennsylvania Whistleblower Law__

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, __Noah Cohen__, counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: __02/09/2023__       *Attorney-at-Law / Pro Se Plaintiff*       __313849__  *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HECTOR FIGUEROA<br>6 Doolin Bay Drive<br>Bear, DE 19701<br>           Plaintiff,<br>    v.<br>DELAWARE COUNTY<br>201 W. Front Street<br>Media, PA 19063<br>           Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION NO. |

**CIVIL COMPLAINT**

**1.    Introduction**

Plaintiff, Hector Figueroa, former Assistant Director of Labor Relations for Delaware County, brings this action under the Pennsylvania Whistleblower law to redress his unlawful and retaliatory termination for reporting investigative findings of gender discrimination against a member of Delaware County supervision that if left unaddressed would subject the County to liability under the Pennsylvania Human Relations Act and Title VII of the Civil Rights Act of 1964. When Plaintiff and his direct supervisor reported their findings and recommendation to management that the offending supervisor be immediately disciplined and placed on administrative leave, Plaintiff himself was terminated and his direct supervisor was demoted. Plaintiff has filed additional claims under Title VII and the PHRA with the appropriate administrative agencies and will move to amend this Complaint when those claims are ripe.

**2.    Parties, Jurisdiction, and Venue.**

1.    Plaintiff Hector Figueroa an adult individual residing at the above address.

2.    Defendant, Delaware County is a county in the Commonwealth of Pennsylvania with a principal place of business at the above address.

3.    Jurisdiction is conferred by 28 U.S.C. § 1332 as the amount in controversy in this

matter exceeds $75,000.

4. This action properly lies in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391 as Plaintiff was employed by Defendant in the Eastern District of Pennsylvania at the time of the events giving rise to his claim.

5. Plaintiff has filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) and the Pennsylvania Human Relations Commission, with Charge No. 530-2023-684, which is currently being investigated by the EEOC and plans to amend the instant Complaint to include claims under the relevant statutes once he has properly exhausted the requisite administrative remedies.

**3.    Factual Averments.**

6. Plaintiff was hired by Delaware County on March 21, 2022, for the position of Assistant Director of Relations.

7. Before becoming employed with Delaware County, Plaintiff had more than fifteen years of experience in labor relations, having worked at many institutions doing employee investigations relating to discrimination and harassment, including but not limited to: Arcadia University, the Fashion Institute of Technology, Delaware State University, Compass USA, Jefferson University Hospital, and CNS Wholesale.

8. In the position of Assistant Director for Labor Relations with Delaware County, Plaintiff reported directly to Jamal Johnson, Chief Personnel Officer ("CPO")

9. As Assistant Director, Plaintiff conducted dozens of investigations of both union and non-union employees relating to allegations of discrimination, harassment, hostile work environment, insubordination, along with conducting union negotiations on behalf of the County.

10. During his employment with Delaware County, Plaintiff did not receive any

matter exceeds $75,000.

4. This action properly lies in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391 as Plaintiff was employed by Defendant in the Eastern District of Pennsylvania at the time of the events giving rise to his claim.

5. Plaintiff has filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) and the Pennsylvania Human Relations Commission, with Charge No. 530-2023-684, which is currently being investigated by the EEOC and plans to amend the instant Complaint to include claims under the relevant statutes once he has properly exhausted the requisite administrative remedies.

**3.    Factual Averments.**

6. Plaintiff was hired by Delaware County on March 21, 2022, for the position of Assistant Director of Relations.

7. Before becoming employed with Delaware County, Plaintiff had more than fifteen years of experience in labor relations, having worked at many institutions doing employee investigations relating to discrimination and harassment, including but not limited to: Arcadia University, the Fashion Institute of Technology, Delaware State University, Compass USA, Jefferson University Hospital, and CNS Wholesale.

8. In the position of Assistant Director for Labor Relations with Delaware County, Plaintiff reported directly to Jamal Johnson, Chief Personnel Officer ("CPO")

9. As Assistant Director, Plaintiff conducted dozens of investigations of both union and non-union employees relating to allegations of discrimination, harassment, hostile work environment, insubordination, along with conducting union negotiations on behalf of the County.

10. During his employment with Delaware County, Plaintiff did not receive any

discipline, was not put on a performance improvement plan, or receive any negative feedback regarding his work product up until his abrupt termination by Deputy Director for Delaware County Marc Woolley on August 23, 2022.

11. Plaintiff was an outstanding and diligent employee, who was terminated because he was doing his job, namely investigating and issuing reports that Lisa Jackson, Delaware County Director of Purchasing, discriminated against Franklin Fitzgerald, her direct report, on account of his gender.

12. Mr. Fitzgerald initially brought his complaint against Director Jackson to Munsanda Brown, Assistant Director of Talent Management, who elevated the complaint to Plaintiff, directing him to investigate the allegations that Mr. Fitzgerald had been subjected to gender discrimination by Director Jackson.

13. Mr. Fitzgerald continued reporting to Director Jackson after having made his complaint against her.

14. On July 28, 2022, Director Jackson sent a disciplinary action notice requesting that Mr. Fitzgerald receive a three-day suspension.

15. On August 1, 2022, Deputy Director Marc Woolley approached Chief Personnel Officer (CPO) Jamal Johnson, and asked that Mr. Fitzgerald be suspended for 3 days.

16. CPO Johnson told Mr. Woolley that Director Jackson's request for discipline had only recently been made, that a suspension would be premature unless the allegations were substantiated.

17. Immediately afterwards, County Solicitor William Martin approached CPO Johnson in the HR office, and said that he wanted Mr. Fitzgerald transferred from he Purchasing Department.

18. CPO Johnson explained to Solicitor Martin that he had not yet spoken to Mr. Fitzgerald and any action at that time was premature.

19. Plaintiff and CPO Johnson interviewed Mr. Fitzgerald later in the day on August 1, 2022.

20. Mr. Fitzgerald alleged long-term abuse by Director Jackson and denied he was at fault in the confrontation. He named several individuals who, if interviewed, would support his account of the abuse, including Michael McGough, Andrew Furman, Linda Ryan, Anne Coogan, and Denise Long.

21. At the conclusion of the interview Mr. Fitzgerald was placed on administrative leave and informed that this action was not considered disciplinary but was necessary to allow Plaintiff and CPO Johnson to complete the investigation.

22. Plaintiff interviewed McGough, Furman, and Ryan on Tuesday August 2, 2022.

23. Mr. McGough and Mr. Furman issued statements entirely supporting the account of Franklin Fitzgerald, stating that Director Jackson bullied, harassed, and belittled Mr. Fitzgerald, including stating that Mr. Fitzgerald wanted to "be King".[1]

24. CPO Johnson conducted additional interviews of Anne Coogan and Denise Long on August 3, 2022.

25. Director Jackson refused multiple requests from Plaintiff and CPO Johnson for interviews in connection with their investigation.

26. On Thursday August 4, 2022, CPO Johnson forwarded the completed interview summaries authored by himself and Plaintiff to Mr. Woolley and Mr. Lazarus, the County

---

[1] While initially Ms. Ryan, refused to provide a statement to Plaintiff, she later gave a statement that she was afraid to give a statement because she knew that Director Jackson was well connected and was concerned she would be retaliated against for speaking out against her.

Executive Director, and informed them that the interviews were complete and there is "lots to discuss" here.

27. Mr. Woolley replied to this email with some grammar edits to Plaintiff's file but provided no other substantive feedback.

28. CPO Johnson spoke with Mr. Woolley about his and Plaintiff's investigation on August 5, 2022. Mr. Woolley stated that Mr. Fitzgerald must be moved, and that a confidential search would begin to replace Director Jackson.

29. CPO Johnson spoke with Francine Locke in the Office of Sustainability late in the day on August 5, 2022, and asked about transferring Mr. Fitzgerald to her office. Ms. Locke stated that she was fine with the move, but that "earlier that week" she had been approached by Director Jackson, who informed her that she "knew" Mr. Fitzgerald was looking to move into her office and warned her not to do so, saying he was a "bad worker" among other things.

30. Ms. Locke did not know how Director Jackson became aware of that there was discussion about moving Mr. Fitzgerald to her supervisory unit.

31. On Tuesday August 9, 2022, Mr. Woolley and Lauren Footman, the Diversity, Equity, and Inclusion Officer for Delaware County, called CPO Johnson into the Executive Director's Office.[2]

32. Mr. Woolley wanted to know where Mr. Fitzgerald had been placed. CPO Johnson stated that he was being transferred to Ms. Locke's supervision as there were no other viable positions for him elsewhere. Mr. Woolley instructed CPO Johnson to order Mr. Fitzgerald to transfer of Ms. Locke's supervision and into Fair Acres, the nursing home operated by Delaware County.

---

[2] Although the meeting took place in his office, upon information and belief, Mr. Lazarus was on vacation for the week and he was not present.

33. CPO Johnson reminded Mr. Woolley that Fair Acres indicated they could not accommodate Mr. Fitzgerald and there would be issues with the move. This advice was disregarded. Mr. Woolley said he would call Jim Peterson to have Mr. Fitzgerald transferred to a position at Fair Acres and that he was not to work with Francine Locke.

34. During this same meeting, Mr. Woolley and Ms. Footman reviewed the statements compiled by Plaintiff during the s investigation of Mr. Fitzgerald's complaints against Director Jackson. Both Mr. Woolley and Ms. Footman stated that they were "not willing" to believe any statements made by Mr. Fitzgerald, Mr. Furman, or Mr. McGough.

35. Ms. Footman volunteered that she had spent 90 minutes with Director Jackson outside of work the night before, as the two are friendly.

36. On August 11, 2022, CPO Johnson met with Deputy Director Woolley to inform him that given the statements that had been made against Director Jackson, and the documentation showing Director Jackson used her position of authority to issue unwarranted discipline against Mr. Fitzgerald, he and Plaintiff were recommending that Jackson be placed on administrative leave.

37. On August 12, 2022, Mr. Woolley responded by email requesting a written recommendation based upon Plaintiff and CPO Johnson's investigation.

38. On the morning of August 15, 2022, CPO Johnson sent their joint findings and recommendation to Executive Director Lazarus and Deputy Director Woolley from their investigation:

> *Given the responses to the interviews, Franklin Fitzgerald's account is substantiated- Lisa Jackson's account is entirely unsubstantiated. Furthermore, the accounts we have about the behavior of Director Jackson are not only alarming, they easily meet the threshold of "workplace bullying and retaliation." As we (management) have been made aware of this behavior and have substantiated the*

> *allegations with independent interviews, we cannot keep Lisa Jackson in her position lest we expose the county to an EEOC lawsuit. Should Franklin or anyone else decide to file such a suit, we have no defense. The recommendation is immediately placing her on paid admin leave while we conduct additional follow up interviews as necessary. Director Jackson should be afforded every opportunity to respond and provide witnesses that might clear her here, but so far every interview conducted is in accord with each other.*

39. CPO Johnson followed up the email with a conversation with Executive Director Lazarus at approximately 9 a.m. on August 15, 2022, noting that both he and Plaintiff were in accord on the approach for Director Jackson. Mr. Woolley was not yet in the office.

40. Mr. Lazarus did not disagree with Plaintiff and CPO Johnson's approach and gave them permission to proceed.

41. A draft of the administrative leave notice to be issued to Director Jackson was prepared and forwarded to Mr. Lazarus at 1:50 p.m. on August 15, 2022.

42. Mr. Lazarus had no additional or alternate edits or recommendations for the notice, asked that Mr. Woolley be kept informed.

43. Director Jackson was scheduled to meet with CPO Johnson and Plaintiff in HR by the end of the day [August 15, 2022] via Outlook invite.

44. At 2:02 PM on August 15, 2022 Mr. Woolley wrote: "*We should discuss or should have discussed the immediacy of this recommendation, given that I am her [Director Jackson] immediate supervisor. In addition, we should have a communication plan for Council so that they are kept in the loop. Let's discuss.*"

45. CPO Johnson responded that the need was immediate, and that keeping Director Jackson in her position would expose the county to a lawsuit should any of her employees decide to file with the EEOC.

7

46. Mr. Woolley then called CPO Johnson and questioned the need to place Director Jackson on administrative Leave.

47. When CPO Johnson cited EEOC guidance in response, Mr. Woolley stated that he "did not believe" that EEOC guidance said what CPO Johnson said it did regarding this situation.

48. Mr. Woolley responded that he would not be taking any action towards Lisa Jackson until he saw that guidance in print.

49. At 3:09 p.m. CPO Johnson sent another email to Mr. Woolley and Mr. Lazarus with the information Mr. Woolley had asked for- a link to a document on the EEOC website titled "Enforcement Guidance: Vicarious Liability for Unlawful Harassment by Supervisors."

50. The email stated:

> *Per the simple definitions provided, we are vicariously liable for Director Jackson's actions here as she is the supervisor of these employees. We are always liable for the harassment if it culminates in a tangible employment action. Whether we have reached that level or not is up for debate, but in the event that Director Jackson's actions have not met that standard, we can only avoid being liable if we are able to show that we promptly exercised reasonable care to prevent AND correct any harassing behavior." "Remedial measure should not adversely affect the complainant. Thus for example if it became necessary to separate the parties, then the harasser should be transferred (unless the complainant prefers otherwise.) Remedial responses that penalize the complainant could constitute [sic] unlawful retaliation and are not effective in correcting the harassment. We have enough evidence here as-is to determine the harassment here is not minor. It easily meets the "severe and pervasive" threshold not just for Franklin but for others in the office. In that case suspension or discharge is an appropriate measure. In the event that we simply decided to separate the parties, we could not adversely affect the complainant. As the "complainant" in this case is "everyone in the office that we know of" Director Jackson cannot stay within that office.*

51. Neither Mr. Lazarus nor Mr. Woolley responded to this email.

52. Director Jackson failed to show up in HR as scheduled for her interview with

8

Plaintiff and CPO Johnson and did not reach out to the office.

53. Later in the day on August 15, Mr. Woolley walked into HR to indicate that he would be counseling Director Jackson on the issue, had talked to Solicitor Martin, and that no other action would be taken.

54. When CPO Johnson objected to this, noting again that it put the County at significant risk of liability, Mr. Woolley told to him to "talk to Bill Martin."

55. CPO Johnson met with Solicitor Martin on August 16, 2022. During that meeting Solicitor Martin stated that Mr. Woolley had come into his office alleging that "Howard Lazarus and CPO Johnson were trying to fire Lisa Jackson."

56. During a meeting in the morning of August 17, 2022, between Executive Director Lazarus, Deputy Director Woolley, Solicitor Bill Martin and CPO Johnson, CPO Johnson was informed that no suspension (paid or unpaid) or termination would be entertained for Director Jackson.

57. On August 19, 2022, Mr. Woolley told CPO Johnson that he had talked to Director Jackson and HR could go ahead and schedule her interview.

58. When CPO Johnson responded that Director Jackson told him she was leaving town the day before for Vacation, Mr. Woolley responded that it would just have to be "later" in that case.

59. On August 22, 2022, Plaintiff received an email from Mr. Woolley's administrative assistant scheduling a meeting for Mr. Woolley and himself for 3:30 p.m. on the following day.

60. At 4 p.m. on August 23, 2022, CPO Johnson was called into a meeting in the Executive Director's Office with Mr. Woolley and Mr. Lazarus. During that meeting it was explained that Plaintiff was being fired immediately, due to "complaints" and "missing deadlines."

61. CPO Johnson asked which complaints and deadlines those might have been and was not provided an answer.

62. CPO Johnson was also informed at this time that he was being removed from the CPO role, it would be assigned in the interim to Mr. Woolley, and he was being demoted to Asst. Director of Labor.

63. Notably, there is a running log of all labor issues, complaints, and grievances, but that document for confidentiality reasons was not hosted on any network drive- it existed only in hard copy format and was shared only between Plaintiff and CPO Johnson.

64. That file had been requested by Mr. Woolley and Mr. Lazarus exactly once on July 22, 2022, and neither they nor any members of Council were in a position to know the exact timeline between receipt of complaints and closure at the time Plaintiff was terminated because they had never requested any updates to that file or another physical copy.

65. CPO Johnson was not given any documentation explaining the reasons for his demotion.

66. At 4:30 p.m. Plaintiff was summoned to a Conference room to find Mr. Woolley and Mr. Lazarus present. The meeting lasted approximately five minutes.

67. Mr. Woolley told Plaintiff that the Human Resource department was totally dysfunctional and that he felt that some of the actions taken by the Department had put the County in legal jeopardy.

68. Plaintiff was completely surprised as this was the first-time, he had received negative feedback. Plaintiff asked Mr. Woolley for any documentation for what he was referring to. Mr. Woolley refused and told him that he was terminated. Mr. Lazarus did not speak during the meeting.

69. Plaintiff was escorted from the building by a uniformed police officer who had been standing immediately outside of the conference room door.

70. Note that this treatment is entirely unprecedented and is directly at odds with Delaware County's usual procedure of issuing performance improvement plans or counseling before any adverse employment action is taken.

71. The vague, unsupported reason provided for Plaintiff's termination was pretextual, and the speed and lack of preparation of the termination (again, no documentation was prepared, and there was no transition plan) demonstrates that it was meant to stop an action in progress.

72. Delaware County has specific regulations regarding progressive discipline which were not followed. *See* Delaware County Administrative Code § 6-21(B)(3): "Types of disciplinary action. Disciplinary actions shall be progressive in other than serious offense which may warrant immediate discharge. Normal disciplinary action will follow the pattern of oral warning, written reprimand, suspension, then demotion or dismissal."

73. Instead, Plaintiff was terminated without any legitimate justification or warning, in retaliation for his findings and decision substantiating Mr. Fitzgerald's gender discrimination complaint against Director Jackson and recommending that she be disciplined for creating a hostile work environment thereby subjecting Delaware County to liability.

**4. Causes of Action.**

### COUNT I – Pennsylvania Whistleblower Law, 43 P.S. § 1421 *et seq.*

74. Plaintiff incorporates by reference the preceding paragraphs of this complaint as if set forth fully and at length.

75. Plaintiff is a protected employee as defined by 43 P.S. § 1422.

76. Delaware County is a covered employer as defined by 43 P.S. § 1422.

77. Plaintiff made a good faith report of "wrongdoing or waste" as defined by 43 P.S. § 1422 by: (a) Finding that Director Jackson created a hostile work environment for Mr. Fitzgerald and other employees and thereby subjected Delaware County to liability; and (b) recommending that Director Jackson be administratively suspended as discipline for her discriminatory conduct.

78. Delaware County retaliated against Plaintiff for his good faith report of wrongdoing by terminating his employment.

79. As the Pennsylvania Supreme Court held in *Harrison v. Health Network Lab'ys Ltd. Partnerships*, 232 A.3d 674, 684 (Pa. 2020), Plaintiff's report of Director Jackson's discriminatory conduct against another permits him to pursue his claim under the Pennsylvania Whistleblower Law.

## **Request for Relief**

WHEREFORE, Mr. Figueroa prays for the following relief:

a. An award of damages to compensate him for his economic loss;

b. An award of compensatory damages to compensate him for his non-economic losses;

c. An award of costs, including reasonable attorney fees and witness fess; and

d. Such other relief as the Court deems appropriate.

WEIR GREENBLATT PIERCE LLP

DATE: February 9, 2023

*s/Noah Cohen*
Noah Cohen, Esquire (PA ID 313849)
ncohen@wgpllp.com
1339 Chestnut Street, Suite 500
Philadelphia, Pennsylvania 19107
Tel: 215-665-8181
*Attorney for Plaintiff Hector Figueroa*