UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HECTOR FIGUEROA** | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| vs. | : | Case No. 2:23-cv-00515 |
| **COUNTY OF DELAWARE** | : | |
| Defendant. | : | |

AFFIDAVIT OF WARDEN LAURA WILLIAMS

Laura Williams, being duly sworn according to law, deposes and says:

1. I am an adult individual and make this affidavit of my own free will.

2. I am the Warden of the George W. Hill Correctional Facility ("the County Prison"), located at 500 Cheyney Road, Glenn Mills, Pennsylvania, a county prison operated by the County of Delaware.

3. In such capacity, I also have executive oversight of the operation of the County Prison and its personnel.

4. On January 31, 2022, I was named Warden of the County Prison as part of the process of the County of Delaware's transition of taking full control of the operation of the County Prison from the GEO Group ("GEO"), a national for-profit prison operator.

5. As part of the transition, although the County Prison has its own Human Relations Department, it was expected to report to and seek guidance from the central Human Relations/Personnel Department that was headed by Jamal Johnson.

6. As such my Department was expected to take direction and input from Mr. Johnson's department on the handling of personnel matters, including but not limited to,

union negotiations, personnel investigations, and such things as separating alleged victims from alleged abusers while discrimination claims are being investigated.

### The Transition of the County Prison from Private to Public Control and Collective Bargaining Issues

7. As part of the aforementioned transition, the County of Delaware elected to enter into negotiations to achieve Collective Bargaining Agreements ("CBA") with the prison correctional officers and other unions representing the correctional sergeants.

8. On February 10, 22, at the direction of labor counsel (Archer & Greiner), I forwarded the CBA's for the Correctional Officers and the Sergeants to Hector Figueroa, as he was designated as the appropriate entity to begin outreach to schedule meetings with the respective union leadership.

9. On February 18, 2022, I sent a follow up email to Mr. Figueroa to ask if he had engaged any of the unions.

10. Mr. Figueroa responded on February 19, 2022, that he had not made any follow up.

11. The County's special labor counsel, attorneys Carlton Johnson and Shelley Smith also engaged in follow up with Hector Figueroa to ensure that contact would be made.

12. By March of 2022, I became aware that the outreach had not occurred and a phone number was provided to Mr. Figueroa again on March 16, 2022.

13. I became aware that Figueroa called Stephen Richman, Esquire, counsel for the Delaware County Prison Employees Independent Union ("DCPEIU") on March 16, 2022. This is first awareness of contact, over one month in follow up to Mr. Figueroa.

14. At that time, Mr. Figueroa still had no communication with the Sergeant's union.

15. On March 23, 2022, I began to notice that Hector Figueroa was emailing Jamal.Johnson@crozer.org (apparently a former employer of Mr. Johnson) and not his county-issued email address, such that necessary emails were not reaching Jamal Johnson through his official email. Although this was addressed multiple times, this error was continuing from Mr. Figueroa.

16. On March 25, 2022, a meeting was held in which Jamal Johnson, Hector Figueroa, Patrick Doran (Archer & Greiner), Tom Kohn (DCPEIU counsel), Stephen Richman (DCPEIU counsel), Ashley Gwaku and Frank Kwanning attended. The purpose of this meeting was to provide the employment Terms and Conditions during the upcoming transition. Hector and Jamal volunteered to provide the following information to the representatives of DCPEIU: benefit comparison from GEO to County, Dues checkoff, pay cycles, county pension/retirement benefits. I recorded minutes for this meeting and sent a summary email on March 25, 2022. I sent a follow up email on March 20, 2022 to have this information sent to the union prior to the April 6, 2022 transition. With prompting, this information was sent.

17. On April 5, 2022, the information for the Sergeant's Union was provided to Hector and Jamal.

18. On April 6, 2022, The County of Delaware fully assumed the operation of the County Prison.

19. On April 8, 2022, Stephen Richman reached out to Hector Figueroa regarding a number of requests. This was forwarded to me and I immediately included

John McLaughlin (newly assigned legal counsel with Campbell Durant) for review. I did not receive any further emails about this request from Mr. Figueroa until June 24, 2022 at which time he claimed he has sent me multiple follow up requests, which he in fact did not. Mr. Figueroa copied DCPEIU counsel Mr. Richman on this email.

20. In response to this email, I advised Mr. Richman that I was unaware of any of his efforts to obtain a response to his April 8, 2022 request and asked that he direct future requests to myself and John McLaughlin, Esquire.

21. In my review of the aforementioned June 24, 2022 email of Mr. Figueroa I noted that he had multiple email correspondences with Attorney Richman of which he never notified me including:

  a. An email sent on 5/25/22 from Stephen Richman to Hector Figueroa seeking follow up to his April 8, 2022 requests;

  b. An email sent on 6/10/22 from Stephen Richman to Hector Figueroa seeking follow up to his April 8, 2022 requests;

  c. An email sent on 6/13/22 from Hector Figueroa to Stephen Richman; and

  d. An email sent on 6/15/22 from Stephen Richman to Hector Figueroa

22. I understand now that Mr. Figueroa left employment with the County for a period of time while Mr. Richman was sending him emails, but Mr. Figueroa did not inform me that he was leaving at the time.

23. After a meeting to discuss the Union requests from the Union was completed on July 1, 2022 at 9:00am, the information was fully furnished to Mr. Figueroa for communication. I further stated, in an email on same date (titled RE: Listings/GEO transition) that I "Would respectfully assert that communications with the

union are either inclusive of myself and John McLaughlin OR we are provided with a summary of any discussions."

24. These issues in the delay in communications later fed into the Union's Unfair Labor Practices Complaint described below.

### Personnel Issues

25. On May 11, 2022, a Correctional Officer submitted a complaint of sexual harassment that was immediately reported and forwarded to Hector Figueroa and Jamal Johnson. There was no action from either individual despite multiple attempts and follow up emails from George W. Hill Human Relations staff as well as myself.

26. On July 12, 2022, the aforementioned Correctional Officer submitted a resignation. Her resignation implied a constructive discharge situation.

27. On July 19, 2022, the aforementioned Correctional Officer abandoned her post and indicated that there had been no follow up to her claims. Interviews had not been scheduled with staff or addressed and multiple staff were placed on a paid administrative leave status, compromising staffing and operations in the facility.

28. On July 29, 2022, I participated in an in-person meeting in the County Council Conference room with Jamal Johnson, Lauren Footman, and Marc Woolley. A meeting was designated due to outstanding complaints and investigations that had languished for significant time periods and were unresolved. I requested an in-person meeting because I felt that I deserved the opportunity to be able to communicate directly with Mr. Johnson. While in virtual meetings, he frequently has his camera off. If he is on-camera, he is always focused on another screen and does not appear to be invested and engaged. I recognize that this is subjective, but it has felt disrespectful that he is

unwilling to thoughtfully and actively engage and participate in conversations. His lack of eye contact has been unnerving and frustrating. During the in-person meeting, I was able to provide him with this direct feedback. I explained that I did not trust that we could successfully work together because our history of communication had proven to be ineffective thus far. I asked him to provide feedback as to how we could work on ways to resolve that. It was suggested that we be more communicative via telephone instead of relying upon written communication.

29. On July 30, 2022 Lauren Footman provided the following next steps in writing to Mr. Johnson and myself:

   a. Mr. Johnson was to speak with Mr. Figueroa on July 29 to have him contact all remaining interviewees to provide them a status update on the interview schedule.

   b. By close of business August 1, Mr. Figueroa should provide Mr. Wooley a timeline to complete all existing investigations at the Prison

   c. Mr. Figueroa should attempt to complete outreach to all remaining interviewees on Monday and liaise with Laura to ensure efficiency

   d. As the investigation continues, Johnson and Wooley were to give status updates to Ms. Footman, Mr. Wooley, and myself. If there are any time sensitive information that needs to be relayed, Johnson and Wooley were to call me.

   e. Mr. Johnson was to collaborate with Mr. Wooley, Mr. Figueroa and myself to revise interim findings memo

    f. Mr. Johnson was to confirm Mr. Figueroa's outreach timeline to Prison Leadership with respect to the Union's request for information

    g. Ms. Footman was to coordinate weekly calls with Iris Wiley, Mr. Johnson, Mr. Figueroa, Mr. Wooley and myself to ensure efficient and effective coordination with Central Personnel and the Prison

30. On August 10, 2022, I received the finalized report regarding the aforementioned Correctional Office's sexual harassment complaint. The timeline from the report being filed to a final disposition was May 11, 2022 until August 10, 2022 – almost 4 months from submission of an egregious complaint that resulted in the termination of a Sergeant and the suspension (5 day) of a lieutenant.

31. Said disposition was simply untimely under the circumstances.

## Labor Union Negotiation Issues

32. Thereafter certain correctional officers who were not extended offers of employment due to discrimination claims filed against them then filed an Unfair Labor Practices complaint as they believed they were not offered employment in relation to their activities as officer of the union.

33. On August 12, 2022, Mr. Figueroa sent an email to coordinate if there would be availability on the 22nd of August to begin negotiations on the Unfair Labor Practices Complaint ("ULP"). There were multiple emails exchanged and I submitted several follow up questions that did not receive a response.

34. On August 18, 2022, Mr. Figueroa sent an email with a scheduled time for a negotiation meeting on the 22nd of August. He did not consult with my calendar and committed to the time with the union despite my conflicts with pre-scheduled

commitments. He then, further alleged, that he did not hear from me and proceeded with scheduling. I provided email proof that he did receive a response from his initial inquiry email as well as many questions that had not been answered. I asked that we discuss during the scheduled meeting at 2:00 pm.

35. On August 18, 2022, at a 2:00 pm a virtual meeting to discuss the Unfair Labor Practice Complaint, several issues regarding communication were addressed. Communication was continuing to take place with the Union without engagement from myself or legal counsel assigned. Additionally, we were not being provided with summaries of these conversations. I expressed concern that if we weren't able to resolve these internal communication issues, additional challenges and legal action would likely take place. Mr. Figueroa reported that he had not recalled seeing my emails. I expressed that these mistakes could not continue. I further stated that he did not have permission to forward my email to the union as it included my personal narrative to legal counsel.

36. On August 18, 2022 at 3:06pm, Mr. Figueroa directly emailed Attorney Richman representing the Union a copy/pasted version of my email that referenced 12 hour schedules as well as ULP charges.

37. On August 25, 2022, I drafted an email to Mr. Johnson, Mr. Woolley, Mr. Lazarus, Ms. Footman, and Ms. Wiley to identify the outstanding items that remain within the County Personnel/HR Department which were:

    a. Complaint of Harassment and Discrimination filed 6/22/22

    b. Complaint of Sexual Harassment filed 8/2/22

    c. Complaint of Racism and Hostile Work Environment filed 8/16/22

    d. Complaint of Harassment filed on 8/23/22

  e. Finalizing the ADA training due to Jamal Johnson's allegation that GWH personnel was not in accordance with federal law (reported in his 8/10/22 findings report)

  f. Multiple labor requests that need addressed to prepare for next negotiation meeting scheduled for 9/12/22.

38. After Mr. Figueroa was terminated, I found that Mr. Johnson addressed my concerns for Human Relations/Personnel issues in a timely and satisfactory manner. More the Affiant sayeth not.

BY: _____Laura K. Williams_____
LAURA WILLIAMS
George W. Hill Correctional Facility

SWORN TO AND SUBSCRIBED BEFORE

This __24th__ day of __January__, 2024

_____Dana L. Keith_____
NOTARY PUBLIC

Commonwealth of Pennsylvania - Notary Seal
Dana L. Keith, Notary Public
Delaware County
My commission expires September 19, 2027
Commission number 1236679
Member, Pennsylvania Association of Notaries